## KING v. NELSON & Co.

1. **Instructions:** REFUSAL OF. Instructions based upon a state of facts of which there is no evidence may be properly refused.

2. **Sales:** CONSTRUCTION OF CONTRACT. Where, in an action by a merchant to recover the price of a lot of glass sold and shipped to defendant, the defendant resisted the claim on the ground that it was not "well packed," as ordered, it was held erroneous to instruct the jury that the term "well packed," means so packed as to bear transportation by the proposed route.

3. **Evidence:** CARRIER'S RECEIPT. In an action where a claim for damages is made against a vendor for shipping goods insecurely packed, a receipt of the carrier acknowledging the shipment of the article in good order, is admissible.

*Appeal from Des Moines District Court.*

MONDAY, JUNE 9.

ACTION for the recovery of $994.65, with interest from December 22, 1870, upon open account for the amount of a bill of window glass.

The defendants admit the purchase of the glass on the terms stated, but deny that they owe any thing thereon.

They allege that about June 9, 1870, they ordered from plaintiff, at Pittsburg, merchantable glass, well packed, and required plaintiff to send the same immediately by boat. That plaintiff delayed the shipment until defendants deemed it to their interest to change the order. That accordingly on June 20, they requested plaintiff, by telegram, to ship said glass by rail at once. That after the receipt of the telegram, plaintiff shipped the glass by steamboat at Pittsburg to be forwarded by the Ohio and Mississippi rivers.

That by the delay the river had fallen so that the transportation was attended by unusual delay and expense. That the glass was unmerchantable and badly and insecurely packed before it was delivered to the steamer for shipment at Pittsburg, and was then worth $312.43 less than it wou d have been if it had been of the quality, and in the condition, required by the order.

Or that by reason of the negligence and wrong of plaintiff in shipping said glass by river instead of rail, the same was subjected to great delay and exposure by reason of low stage of water, and was greatly damaged and rendered unmerchantable, and worth $312.43 less than if it had been in such condition as defendants required. That defendants will prove one or the other of the group of facts stated in petition.

That the unmerchantable quality of the glass was not discovered until it was received and opened, and that the glass purchased was worth only the sum of $688.22, which sum defendants have paid with interest.

An amended answer, and amendment thereto, were filed, but they do not materially change the issue above presented.

The order for the glass is dated June 9, 1870, and is as follows : " Please send us immediately by boat :

" City glass, 8x10 — 100 &c.

" Second, 9x12 — 30 &c.

" The whole to be good merchantable glass, well packed and in good packages. Discount 40 and 5 per cent. Terms six months."

On the 21st of June, 1870, the defendants dispatched to plaintiff the following telegram : " Ship our glass by rail immediately, if not shipped, and telegraph the fact." To which the plaintiff, on the 22d of June, replied as follows : " Forwarded by river this morning. Invoice by mail." Evidence was introduced upon the part of plaintiff, showing that the telegram of defendant was received at 8 o'clock, A. M., June 22, and that when it came, the greater portion of the goods was on the steamer " Wild Duck," and the balance on the river bank. Evidence was also introduced tending to show that the glass when shipped was well packed and in good condition. That the boxes did not rattle when handled, and that if a box of glass does not rattle when packed up, the contents are in good order.

Upon the part of defendants evidence was introduced tending to show that the glass was delivered at Burlington, twenty-eight days after the shipment, by a vessel of the Northern Line Packet Company. That it was packed in the ordinary manner, but apparently in old and time-worn boxes ; that the straw was rotten and decayed ; that the glass rattled in the boxes, and that much of it was broken, and in consequence thereof, unmerchantable. The defendants testified that they found no fault whatever with the quality of the glass.

Under the instructions of the court the jury found for defendants. Motion for new trial was overruled. The plaintiff appeals. The further facts appear in the opinion.

*Halls & Baldwin* for the appellant.

*Smythe & Hedge* for the appellees.

DAY, J. — I. The plaintiff requested the court to instruct the jury as follows:

" If it appears from the testimony that the plaintiff, Alexander King, was not a manufacturer of the goods in controversy, but a jobber or dealer, and if you find from the testimony that Nelson & Co., themselves jobbers, were aware of Mr. King's character and situation as a mere dealer, then, in determining the question of the merchantable character of the goods, in the absence of any express agreement, you will consider this term, ' merchantable,' as known, applied and understood between dealers or jobbers in glass."

" Merchantable glass means that the glass, in its condition and appearance, conforms generally to what would be understood by the trade or by glass merchants, as merchantable glass."

" If you find it to be the rule among dealers that glass put up in good boxes, and which does not rattle when handled or shaken, is regarded as merchantable glass, and it is fairly shown by the testimony that the glass was in that condition at the time it was shipped by the plaintiff on board the steamer at Pittsburg, then defendants are not entitled to any allowance on account of the unmerchantable character of the glass when it reached Burlington, if the shipment was made according to order."

The court refused to give these instructions, and this refusal plaintiff assigns as error. As the case is presented to us in the record, we are unable to find that there was error in refusing to give these instructions. They are based upon the supposition that evidence was introduced tending to show what was understood in the trade by the terms " merchantable," " well packed " and in " good order." As we read the abstract, it does not show that any such evidence was introduced. True, the plaintiff testified, " when the package bears no evidence of rough handling or usage, and the contents do not jingle or rattle, we consider the box of glass in good

order." This evidently refers to what his house regarded as good order, and not what was so considered by the trade generally. Thomas D. Bell also testified : " If the box looks well and the glass does not rattle, I call it in good order ;" and George McChesney testified that " when a box of glass is picked up and does not rattle, and the box is in good condition, the contents are in good order." But this is the mere opinion of these witnesses as to what constitutes good order. And this is all the evidence on the subject. There is no more reason in holding that defendants, in their contract, adopted and should be bound by the meaning which these witnesses attach to the terms " well packed," and in " good order," than that they should be allowed to enforce against plaintiffs the peculiar meaning which they attributed to these phrases. In the state of the evidence, therefore, there was, in our opinion, no error in refusing to give these instructions.

II. At the instance of defendants, the court instructed the jury as follows: " The term ' well packed ' means so securely

2. SALES: construction of contract.

packed as to bear transportation by the proposed route from Pittsburg to Burlington."

The plaintiff excepted to the giving of this instruction, and now assigns the same as error. The instruction should have been refused. The only reasonable construction which can be placed upon this instruction is that the term " well packed " means so securely packed as to bear transportation by the proposed route *without injury*. If it merely means that the package shall bear transportation either sound or in fragments, it furnishes no rule to guide the jury, and is practically meaningless. A box of glass which is sound when shipped, but a portion of which reaches its destination in a broken condition, has not borne transportation without injury. And yet we suppose that in practice this is a very usual occurrence. The nature of the article is such as to render it almost of necessity liable to some injury during shipment. And persons dealing with it must be supposed to take into consideration its peculiar properties, and to contract with a view to the ordinary

injuries to which it is subject.    It cannot then be laid down as a matter of law that a box of glass which is injured in shipment was not well packed.    Such a rule would make the shipper a warrantor of the condition of the article at the time of its arrival.

III. The plaintiff also asked the court to give the jury the following instructions :

"The agreement was to ship immediately, and this you must understand in a reasonable sense, and if the goods were shipped as soon as under the circumstances they could be reasonably done, in view of the route, the difficulty there might be in procuring a boat, etc., then you may say that the goods were shipped immediately in the sense to be understood in the contract."

"Defendants claim the plaintiff shipped the glass by river, contrary to their order.    But if you find, from the testimony, that the original order of defendants was to ship by boat, and that within a reasonable time, after the receipt of the said order, plaintiff was proceeding to make the shipment by boat as ordered, that at the time of the receipt of defendants' telegraphic order to change the route, plaintiff had made a contract with the boat for the shipment of the glass, that a large portion of the glass was on the steamer, and the balance on the bank for shipment, then you must find that plaintiff, King, complied with the order as to route of shipment, and defendants are not entitled to any allowance for damages occasioned by river shipment."

These instructions were properly refused.    They embrace correct legal principles, as we think, but are not applicable to the evidence.    There was no proof that the goods were shipped as soon as under the circumstances they could be reasonably done.    The order was transmitted on the 9th of June, and the shipment was not made until the 22d.    There is nothing from which the jury could infer that plaintiff made the shipment as soon as he could reasonably do, in view of the route and the difficulty of procuring a boat.    Indeed, the letter of the plaintiff to defendants shows that the delay resulted

from a quite different cause. On the 22d of June, plaintiff wrote defendants as follows:

"I duly received your order to Mr. Stanley, and would have executed the same forthwith, but for two reasons. One was the time mentioned in your order (6 months), which he had no authority from me to give any one, and, therefore, thought there must be a mistake somewhere, and concluded to await his arrival *here* before filling the order. The other is that he sold you some sizes of glass that we have not on hand, and could not purchase at better than 35 per cent discount and 5 per cent off for cash. But, upon finding the river going down rapidly, and this about the last chance, this morning, concluded to forward by river what of the order we could," etc. No claim is made that the glass was shipped as soon as it could reasonably have been done under the circumstances, nor is . there any foundation for such inference in the testimony. The court, therefore, did not err in refusing to give these instructions.

IV. George McChesney, the drayman who delivered the glass to the "Wild Duck," testified, in his deposition, as follows: "I loaded the glass on my dray — drove down to the "Wild Duck" and barges, and unloaded it on the wharf — when the clerk of the boat took charge of it, and signed to my dray book that the glass was in good order — each load as it was delivered." In cross-examination he stated: "The original book I need in my business, I attach a copy of the same as exhibit No. 6.".

3. EVIDENCE: carrier's receipt.

This exhibit is as follows: "Received of Alexander King, in good order, four hundred and twenty boxes glass. Marked Melrose & Co., Burlington, Iowa. Per steamer Wild Duck and barges."

When the deposition was read, defendants objected to the reading of exhibit No. 6, and asked that it be excluded on the ground that it was immaterial and not tending to prove any issue in the case. This objection the court sustained. The ruling, we think, was erroneous. It is to be observed that the objection is not placed upon the ground that the carrier

had no right to bind defendant by an admission of the condition of the goods, as the argument assumes; but it is placed upon the ground that the fact admitted is immaterial.

One of the grounds of defendants' claim is that the glass was unmerchantable, and insecurely packed before it was delivered to the steamer-for shipment. It cannot, therefore, we think, be successfully claimed that evidence is immaterial which shows that it was shipped in good order.

The foregoing discussion sufficiently presents our view of the entire case, without a separate examination of the other errors assigned. As the cause must be reversed for the errors already considered, it becomes unnecessary to determine the question presented in the motion for a new trial, and discussed in argument, whether the verdict is sustained by the evidence.

Reversed.